## Pleasanton's Estate.

356

Argued January 14, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*James A. Walker,* with him *Maurice Stern,* for appellants.—A trustee is not entitled to commissions where his stewardship is not a faithful one and where protracted litigation has been the result of his own negligence or mismanagement of the estate: Norris's App., 71 Pa. 106; Clauser's Est., 84 Pa. 51; Hanna v. Clark, 204 Pa. 145.

Counsel fees cannot be charged against the estate nor to the beneficiaries where the employment was made necessary to extricate the accountants from difficulties brought on by their own carelessness and mismanagement: Lowe's Est., 6 W. N. C. 333; Sinkler's Est., 10 Pa. Dist. R. 399; Hanna v. Clark, 204 Pa. 145.

A fiduciary is not entitled to a four per cent commission on real estate—especially where that sale involves an exchange of the real estate for a mortgage on the same piece of real estate in an amount even greater than the net sale price of the property: Springer's Est., 51 Pa. 342; Moore's App., 10 Pa. 435; Landis v. Scott, 32 Pa. 495; Mayberry's App., 32 Pa. 258; Pusey v. Clemson, 9 S. & R. 204.

The fiduciary is not entitled to a commission for turning the beneficiaries' investments into cash: Stearly's App., 38 Pa. 525.

The beneficiary who is entitled to payments both of principal and income should be paid all income on hand and the principal permitted to remain invested: Stambaugh's Est., 135 Pa. 585; Bosler's Est., 161 Pa. 457.

The fiduciary should be surcharged for permitting large balances of principal and income to remain uninvested in his hands for a long period of time: Keen's Est., 293 Pa. 267; Richard's Est., 185 Pa. 155.

*Thomas Raeburn White,* of *White, Parry, Schnader & Maris,* with him *John Cadwalader,* for appellees.—The court below was correct in allowing commissions to accountants: Patrick's Est., 162 Pa. 175.

There was no error in the apportionment of counsel fees made by the court below.

The court made no error in its allowance of commissions on real estate.

There is no basis for appellants' argument that appellee should be surcharged on account of alleged loss of interest.

The allowance of credits against Pleasanton's income on account of payments proven and admitted in the Keen Estate was proper and in accordance with the opinion of this court.

OPINION BY MR. JUSTICE SIMPSON, March 14, 1932:

In each of these appeals there are fifty-two assignments of error, covering fifty-one of the printed pages in appellants' brief. They suggest a more thorough acquaintance with the process of multiplication, than with the rule that distributions in the orphans' court should be made in accordance with equitable principles: Lonergan's Est., 303 Pa. 142. Happily, the points to which we need refer are fewer in number, and less difficult of solution, than the assignments of error would seem to indicate.

By a codicil to her will, testatrix provided as follows: "I, Julia A. Pleasanton in my right mind change that clause in my will and leave 1226 Walnut Street, 4018 Spruce St. and furniture Lyndall Street house to my nieces at my mother and sister's death." The sister and nieces referred to were Stella M. Keen and her daughters, Beatrice and Mabel. Under a broad power contained in testatrix's will, the executors, after the death of her mother but during the lifetime of her sister, sold the properties named in that codicil, and the proceeds were received by John Cadwalader, one of the executors, who thus became responsible for the handling of the money, and for the disposition of the income which was or should have been realized from the investment thereof. It was admitted that the trustee did not "sell these properties for his own advantage," and that in none of the matters under review was he dishonest, or guilty of any wilful or wrongful conduct. What was done with the income received during the lifetime of Mrs. Keen, covering a period of six or seven years after the sales, need not be considered, not only because her estate has not appealed from the present decree of the orphans'

court, but also because it is expressly admitted that "Mr. Cadwalader paid to Stella M. Keen in her lifetime every dollar that he got for her."

The securities representing the investments of the money thus realized were so segregated by Mr. Cadwalader as to be readily distinguishable, and there was no loss of any part thereof. All the income received, and all the payments made by him to Beatrice and Mabel were duly entered in his general books and accounts, but instead of depositing the income in a separate account for this estate, he deposited it in one which included also receipts from other sources. While the payments made therefrom to Beatrice and Mabel were easily ascertainable, they were not allocated by him to this or any other specified trust. Admittedly this was his only dereliction, and out of it arise nearly all the complaints made on the present appeals.

To the citation to file an account, issued after the deaths of Beatrice, Mabel and Mr. Cadwalader, his executors, who are the appellees, acting on advice of counsel, raised a question as to whether or not the trust should be administered in the court of common pleas, rather than in the orphans' court. When the latter tribunal decided otherwise, however, the account, now under review, was duly filed. It is hinted in appellants' brief that the raising of this question should operate to deprive his estate of all or part of the counsel fees and commissions, which would otherwise be allowable. To this we do not agree. The question thus raised was one of jurisdiction, which it was wise to have determined before the necessarily elaborate examination of the items in the account should be made.

The parties in interest, with the approval of the court, agreed upon an auditor to consider the account and objections and report a schedule of distribution. The same auditor was appointed for a like purpose in the Stella M. Keen estate. In the latter estate, he credited enough of the admitted payments to Beatrice and Mabel to bal-

ance the net income therein, and allowed the remainder thereof as credits on the income of the present estate. This was in accord with what we said on the first appeal in that estate (293 Pa. 267), and is now approved by us. The auditor heard all the testimony produced by appellants and appellees regarding the complaints specified in the seventy-five objections filed by the former to the account, made a careful and painstaking review of each of them, and reported a schedule of distribution, which was approved by the lower court, despite the sixty-two exceptions of appellants to the original report, and their seven additional exceptions to the supplemental report of the auditor in passing on the previous sixty-two exceptions. From the final decree of distribution, the Pennsylvania Company for Insurances on Lives and Granting Annuities, administrators of the estate of Mabel Keen, deceased, and James A. Walker, executor of the will of Beatrice Keen Wescoat, deceased, prosecute the present appeals.

In their "Statement of the Questions Involved" appellants specify seven questions which we are requested to answer, and beyond answering them we need not go: Com. ex rel. v. Kline, 294 Pa. 562; Kolich v. Monongahela Ry. Co., 303 Pa. 463. None of them can be answered favorably to appellants without reversing the court below on some one or more of the facts found, yet the brief in this court does not give us a reference even to the testimony on which they rely for the reversal of those findings, much less "a synopsis of *all* the evidence on the point, with a reference to the page or pages of the record where the evidence may be found," as Rule 53 requires them to do. Instead of doing this, repeatedly they say only that "the testimony is to the effect" claimed by them, without quoting it or even referring to the pages in the record where the testimony pro and con may be found. This alone would be sufficient to justify an affirmance of the decree, yet we will briefly refer to the seven questions seriatim.

The first two challenge the trustee's right to have any commissions or counsel fees out of the fund for distribution, but do not object to the amounts charged, if they are proper credits. These were the principal points litigated, and the reasons given by the auditor and court below for the allowances in fact made, are so clear and convincing as to require only our approval.

The third challenges an allowance of four per cent commission to the trustee on the sale of one of the pieces of real estate. The fact is not as stated. The real estate agent who sold the property received the usual one per cent commission for so doing, and no objection was made thereto. The trustee received the usual three per cent commission, and it alone was objected to. Its allowance was supported by ample evidence, which was believed and relied on by the auditor and court below, and hence is accepted by us: Clark's Est., 303 Pa. 538.

The fourth challenges the right of the trustee to "charge a beneficiary a commission for converting investments into cash." He did not do so. On the occasion referred to, Beatrice, who was of full age and whose interest was then an absolute one, wanted a large sum out of the principal of her share of the trust, and, there not being sufficient money on hand to give that amount to her, she and her husband agreed in writing that the trustee should sell certain of the securities, and allow to the purchaser two per cent of their par value, which was shown to have been the usual commission then payable under such circumstances. The trustee made the sale as agreed upon, the purchaser got the benefit of the two per cent commission, Beatrice got the whole of the purchase price paid to the trustee, and he received nothing.

The fifth question is: "Where there is undistributed income on hand to meet the demands of the beneficiaries, must not the payments made be allocated to income rather than to principal?" There was some evidence and much argument presented by appellants, by which

they attempted to raise this issue; but, when properly considered, there was nothing to pass upon. What did appear was that principal and income were deposited in a single account, payments of income were made thereout, and by the elaborate calculation of an expert accountant, it was endeavored to show that Mr. Cadwalader should have had income on hand, but, according to his accounts, had not, and hence the payments must have been made out of principal. The calculation relied on was not convincing to the auditor or court below, and is not to us.

The sixth question is: "Should not the trustee be surcharged with loss of interest where the average earnings of the estate were only three per cent, and where he permitted large sums to remain uninvested for a long period of time?" The auditor and court below found, from the evidence, that the earnings were five and two-tenths per cent. The imaginary large sum which remained uninvested for a long time, is based on a contention that the trustee should be treated as having it, because he did not reinvest principal the very day investments were paid off, and then by calculating interest thereon from that day, adding it to the principal, and compounding interest on the aggregate of the two sums, the supposed large uninvested balance was found to exist. There was no attempt to show an unreasonable delay in reinvesting, which is the only permissible test. If the trustee, with such haste as this theory of appellants insists on, had made new investments at once and loss had resulted, probably they would have been swift to ask that he be surcharged for that loss. Be this as it may, however, yet, for want of proper proof, the fact and extent of the supposed large sums uninvested could not be ascertained.

The seventh and last question is: "May a trustee charge wrongful overpayments in another estate to beneficiaries in accounting for their funds in this estate?" He did not do so. We have already stated what he did,

viz., he made payments to Beatrice and Mabel, without allocating those payments to either estate, but on the credit side of the account in the Keen Estate, set forth all of those payments. What the auditor and court below rightly did was so to divide them between the two estates, as we intimated in our earlier opinion in the Keen Estate (293 Pa. 267) would possibly be a wise course to pursue. By it, appellants suffered no loss whatever in either estate, and the trustee was given, as far as might be, due credit for the sums he actually paid to Beatrice and Mabel. Any other course would have been grossly unjust to him.

· The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants.